# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **GUROCK SOFTWARE GmbH D/B/A TESTRAIL**,<br><br>Plaintiff,<br><br>v.<br><br>**TESTMO GmbH.**<br><br>Defendant. | §<br>§<br>§<br>§<br>§  CIVIL ACTION NO.: 6:23-cv-302<br>§<br>§  **JURY TRIAL DEMANDED**<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Gurock Software GmbH d/b/a TestRail ("TestRail") files this Original Complaint for trade secret misappropriation against Testmo GmbH ("Testmo" or "Defendant"). In support thereof, TestRail respectfully alleges as follows:

## PARTIES

1. Plaintiff Gurock Software GmbH is a German private limited liability company with its principal place of business at Bonner Straße 12, 51379 Leverkusen, Germany. Gurock Software GmbH's United States headquarters is 10801 N Mopac Expressway, Building 1, Suite 100, Austin, Texas 78759.

2. Upon information and belief, Defendant Testmo is a German private limited liability company with headquarters at Wilhelmine-Gemberg-Weg 11a, 10179 Berlin, Germany.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction for this action pursuant to the Defend Trade secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over the remaining claims asserted herein pursuant to 28 U.S.C. § 1367.

1

5. This Court has personal jurisdiction over Testmo based on Testmo's activities in, and/or directed to, the United States and this forum, including those identified in the allegations set forth herein. Testmo's systematic and continuous actions in and directed to this forum are sufficient to establish personal jurisdiction over Testmo pursuant to Federal Rule of Civil Procedure 4(k)(1) and/or Federal Rule of Civil Procedure 4(k)(2). This includes Testmo's acts in furtherance of the misappropriation in the United States as described in the allegations set forth herein.

6. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Testmo is a foreign corporation not resident in the United States. Plaintiff TestRail also maintains its headquarters in this District.

## FACTUAL BACKGROUND

A. **Idera'a Purchase of Gurock Software/TestRail**

7. On June 8, 2016, Idera, Inc. ("Idera") purchased Gurock Software GmbH (currently known as TestRail) from brothers Dennis and Tobias Gurock as outlined in a Share Purchase and Transfer Agreement (the "SPTA").

8. Prior to the SPTA, the Gurock brothers were the managing directors of Gurock Software GmbH and the sole shareholder of Gurock Software GmbH was Gurock Holding GmbH. After the SPTA was agreed to and executed, Idera owned all shares of Gurock Software GmbH, which currently does business as TestRail.

9. Pursuant to the SPTA, Idera purchased and owns all TestRail intellectual property, including all intellectual property rights pertaining to the software products the company sells as part of its business, including the TestRail and SmartInspect products and any add-ons to those products.

10. The TestRail product is a web-based test case management tool. It is used by quality assurance engineers, developers, and team leads to manage, track, and organize software testing efforts. TestRail allows team members to design test cases, organize test suites, execute test runs, and track their results, all from a modern and easy-to-use web interface. TestRail gives customers the power to build, connect, and optimize their testing processes in ways that are superior to the traditional and less effective methods of documenting test cases on paper, in wikis, bug tracking tools, or general document management systems.

11. The TestRail product has numerous features and functionality that allow its customers to effectively manage, track, and organize software testing efforts including the TestRail dashboard, test cases organized into sections and sub-sections, test runs and test suites, projects, milestones, and test plans and configurations. Each of these TestRail features have specific applications to the software testing process that are invaluable for quality assurance engineers and developers.

12. TestRail has taken extensive measures to ensure the confidentiality of all trade secrets. TestRail has made extensive efforts to ensure the confidentiality of its software functionality and source code. For example, TestRail employees were required to agree to treat such information as confidential. As a company whose main product is software, TestRail's software functionality and source code are crucially important to its business and is a key part of how TestRail derives its revenue.

13. TestRail's software functionality, source code, and other trade secrets have economic value by not being publicly available and they provide TestRail with a competitive advantage over its competitors. TestRail's trade secrets are the result of an extensive investment

of time, money, and labor, and misappropriation of those trade secrets by a competitor would cause TestRail significant and irreparable harm.

**B.    The Gurock Brothers' Access to Trade Secrets**

14.    In connection with Idera's purchase of TestRail, the Gurock brothers entered into employment agreements with TestRail. Dennis Gurock was the Vice President of Customer Success, and Tobias Gurock was the Vice President of Development and IT Operations.

15.    The Gurock brothers remained with TestRail from June 10, 2016, to December 9, 2017. During their employment, the Gurock brothers worked on and helped develop software functionality, source code, and other forms of TestRail intellectual property, all of which are the exclusive property of TestRail. Additionally, the Gurock brothers gained access to confidential trade secrets by virtue of their employment positions. During this time, the Gurock brothers had access to and knowledge of TestRail's trade secrets including, but not limited to, the TestRail software functionality and source code, as well as customer lists, marketing strategies, pricing information, and other confidential and proprietary information.

16.    The trade secret information the Gurock brothers had access to and knowledge of would cause significant and irreparable harm to TestRail if misappropriated by a competitor.

17.    The Gurock brothers had a duty to keep confidential TestRail's trade secrets which were not publicly available and not to use such information for the benefit of others and/or to the detriment of TestRail.

**C.    Testmo's Misappropriation of TestRail's Trade Secrets**

18.    The Gurock brothers' employment contracts with TestRail terminated on December 9, 2017. Upon information and belief, less than two years later (in mid-2019), the Gurock brothers formed a competitor, Testmo GmbH.

19. Testmo holds itself out as "… the #1 unified test management tool to software teams."[1] This product offering is near identical to TestRail's product, which offers a "test case management solution… to build rock-solid software."[2] Upon information and belief, Testmo is a direct competitor of TestRail and sells its services in the same markets, including in the United States and Texas specifically.

20. Upon information and belief, Testmo is using the Gurock brothers' intimate knowledge of TestRail's trade secrets to develop and build a very similar, competing product. Indeed, Testmo describes itself on its website as the "#1 Modern Test Management Software."

21. In addition to marketing and selling its products in the United States and Texas specifically, Testmo's website is interactive, in English, and offers a "Free Trial" to any customer or potential customer of the competing Testmo product that has misappropriated many of TestRail's trade secrets. Upon information and belief, customers in Texas have used the Free Trial offered on the Testmo website in addition to purchasing the Testmo product.

22. Testmo knew or should have known that misappropriating TestRail's trade secrets for Testmo's benefit would totally violate the intellectual property rights of TestRail. Testmo's misappropriation of trade secrets is causing significant and irreparable harm to TestRail.

23. The misappropriation is evidenced on the Testmo website and in the Testmo software product. Upon information and belief, Testmo's product has many features that are similar, if not identical, to TestRail's. Indeed, roughly 39% of all TestRail and Testmo features overlap in terms of direct comparable functionality. These features include but are not limited to the dashboard, project page, numerous testcase and test repository features, milestone

---

[1] Testmo Website, (last visited April 18, 2023), https://www.testmo.com/
[2] TestRail Website, (last visited April 18, 2023), https://www.testrail.com/about/

organizational features, numerous test run and results features, features in the project overview interface, customization fields, and features relating to integration with third party applications. These Testmo features are the result of trade secret misappropriation directly from TestRail, and Testmo is using these trade secrets to gain an unfair market advantage at TestRail's expense.

24. TestRail is being significantly and irreparably harmed by Testmo's misappropriation of TestRail's trade secrets and seeks relief from this Court.

## CAUSES OF ACTION

### Count I – Violation Of Defend Trade Secrets Act
### (18 U.S.C. 1836, *et seq*.)

25. TestRail hereby alleges and incorporates by reference each of the preceding paragraphs of the Complaint as though fully set forth herein.

26. TestRail's trade secrets constitute trade secrets as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

27. TestRail's trade secrets relate to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered in interstate or foreign commerce.

28. TestRail's trade secrets derive substantial independent economic value by not being generally known to the public, and specifically by not being known to TestRail's competitors. They are not generally known within the industry and represent years of extensive research, development, and investment by TestRail. Further, TestRail undertakes all reasonable efforts to maintain the secrecy of its trade secrets from disclosure, including, but not limited to, imposition of duties of confidentiality with its employees, potential customers and licensees and use of contractual agreements expressly prohibiting improper use and disclosure of TestRail's trade secrets.

29. Upon information and belief, Testmo misappropriated TestRail's trade secrets by

disclosing, using, and continuing to improperly disclose and use TestRail's trade secrets to develop its own test management software that it has offered for sale, sold or licensed, and continues to offer for sale, sell or license, to entities in the United States. Further, upon information and belief, Testmo knew that TestRail's trade secrets were acquired wrongfully.

30. Upon information and belief, Testmo's improper acquisition, disclosure, use, and/or continuing use of TestRail's trade secrets constitutes a violation of the Defend Trade Secrets Act.

31. Upon information and belief, Testmo's conduct, and continued possession, use, and disclosure of TestRail's trade secrets has caused, and unless enjoined by the Court, will continue to cause, irreparable harm and injury to TestRail. TestRail has no other adequate remedy at law for such acts. TestRail, therefore, requests a permanent injunction, restraining and enjoining Testmo and its affiliates, subsidiaries, directors, officers, employees, agents and representatives, and anyone acting in concert with them, from: (i) obtaining, using or disclosing TestRail's trade secrets for any purpose whatsoever; (ii) developing or marketing any products that rely on, use, or disclose any of TestRail's trade secrets; and (iii) directing Testmo to return immediately all of TestRail's trade secrets in Testmo's possession, custody or control.

32. Upon information and belief, as a direct and proximate result of Testmo's unlawful, tortious conduct, TestRail has been damaged and Testmo has been unjustly enriched. With respect to Testmo, this unjust enrichment includes value and profits attributable to TestRail's trade secrets, including time and resources saved in research and development costs by using TestRail's trade secrets to develop its own software. Thus, TestRail seeks actual damages caused by Testmo's misappropriation and any unjust enrichment obtained by Testmo (including the gains, profits, and advantages obtained by Testmo as a result of the wrongful acts alleged herein), as well as any other

remedies available under applicable law, including, if warranted, imposition of liability for a reasonable royalty for the unauthorized acquisition, disclosure, use, and continuing use of TestRail's trade secrets.

33. Upon information and belief, Testmo's misappropriation of TestRail's trade secrets was intentional, knowing, willful, and malicious. Testmo knew or should have known that TestRail's trade secrets should not be misappropriated by a competitor. Thus, TestRail is further entitled to an award of exemplary damages and reasonable and necessary attorney's fees.

### Count II: Violation of the Texas Uniform Trade Secrets Act
**(Tex. Civ. Practice & Rem. Code § 134A.001, *et seq.*)**

34. TestRail hereby alleges and incorporates by reference each of the preceding paragraphs of the Complaint as though fully set forth herein.

35. Testmo's prohibited and improper acquisition, disclosure, use, and/or continuing use of TestRail's trade secrets constitutes a violation of the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A.001 *et seq*.

36. As set forth in detail above, TestRail's trade secrets were compiled by TestRail over many years and at great expense. TestRail undertakes efforts to ensure that its trade secrets are kept secret, not generally known or available to the public, and not readily ascertainable by proper means. The steps taken by TestRail to protect its trade secrets include requiring its employees to maintain confidentiality of such information and requiring licensees to sign contracts restricting disclosure of TestRail's trade secrets and limiting use only to the extent necessary to allow properly licensed entities access to TestRail's trade secrets. TestRail's trade secrets provide the company with a competitive advantage in the marketplace and are not ascertainable by proper means by others who might use it to such an advantage.

37. Upon information and belief, Testmo misappropriated TestRail's trade secrets by

improperly acquiring, disclosing, using, and continuing to improperly disclose TestRail's trade secrets by claiming as its own intellectual property developed using TestRail's trade secrets and by selling or licensing and continuing to sell or license software developed using TestRail's trade secrets.

38. Upon information and belief, Testmo's improper acquisition, disclosure, use, and/or continuing use of TestRail's trade secrets constitutes a violation of the Texas Uniform Trade Secrets Act.

39. Upon information and belief, as a direct and proximate result of Testmo's unlawful misappropriation, disclosure, use, and/or continued use of TestRail's trade secrets, TestRail has suffered and will continue to suffer substantial harm. In addition to the monetary damages already sustained by TestRail, Testmo has also been unjustly enriched as a result of its unlawful conduct. Further, TestRail has been and continues to be irreparably damaged, for which there is no adequate remedy at law, and imposition of an injunction is warranted.

40. Further, upon information and belief, Testmo's misappropriation of TestRail's trade secrets was intentional, knowing, willful, and malicious. TestRail therefore seeks an award of exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.004(b) due to Testmo's willful and malicious misappropriation of TestRail's trade secrets.

41. Pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.005, TestRail is also entitled to recover, and hereby pleads for an award of its reasonable and necessary attorneys' fees in connection with Testmo's misappropriation of TestRail's trade secrets.

### REQUEST FOR PERMANENT INJUNCTIVE RELIEF

42. TestRail hereby alleges and incorporates by reference each of the preceding paragraphs of the Complaint as though fully set forth herein.

43. Unless Testmo is enjoined from engaging in additional misconduct, TestRail will be irreparably harmed in the marketplace by having its trade secrets improperly, unlawfully, and competitively used against it. Such misconduct has resulted in loss already, which is unascertainable currently, and will result in future economic loss.

44. TestRail has no adequate remedy at law for Testmo's misconduct, as money damages are not adequate to compensate for the ongoing harm caused by its misconduct.

45. TestRail has a clear legal right to the requested relief.

46. The public interest favors entry of an injunction to uphold the importance of trade secret preservation and to protect the legitimate business interests of trade secret owners.

## DEMAND FOR JURY TRIAL

TestRail hereby demands a trial by jury of any and all issues triable before a jury.

## REQUEST FOR RELIEF

Pursuant to the allegations and claims asserted herein, TestRail requests the following:

A. An order permanently requiring that Testmo be prohibited from using any TestRail trade secrets and from selling or licensing any software services or other products based thereon, regardless of whether the trade secrets are embodied only in a component part of a larger software service;

B. A judgment awarding TestRail its actual, consequential and other damages allowable by law, including any unjust enrichment obtained by Testmo, as well as exemplary damages as provided for under the DTSA and TUTSA;

C. A judgment awarding TestRail its reasonable and necessary attorneys' fees incurred in, and related to, this action;

D. Pre- and post-judgment interest at the highest rate allowable by law;

E. Costs of court; and

F. All such further and additional relief to which it may be entitled.

| | |
|---|---|
| Dated: April 24, 2023 | **BRACEWELL LLP** |
| | /s/ *Conor M. Civins* |
| | Conor M. Civins |
| | Texas Bar No. 24040693 |
| | Conor.civins@bracewell.com |
| | Matthew J. Reasoner |
| | Texas Bar No. 24125833 |
| | Matthew.reasoner@bracewell.com |
| | 711 Louisiana St. Suite 2300 |
| | Houston, Texas 77002 |
| | Tel: 512-472-7800 |
| | Fax: 800-404-3970 |
| | |
| | ***Counsel for Plaintiff TestRail*** |